Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DIANA ZORAIDA PÉREZ PABÓN<br><br>Recurrente<br><br>v.<br><br>JUNTA DE RETIRO GOBIERNO DE PUERTO RICO<br><br>Recurrida | KLRA202500345 | *REVISIÓN ADMINISTRATIVA*<br>Procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Sobre:  Servicio acreditable jueces<br><br>Caso núm.: 2023-0058 |

Panel integrado por su presidente, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2025.

El 9 de junio de 2025, la Honorable Diana Zoraida Pérez Pabón (Hon. Pérez Pabón o la recurrente), presentó ante nos un *Recurso de Revisión Judicial* en el que solicitó que revoquemos la *Resolución* emitida el 6 de mayo de 2025, notificada el 8 de mayo de 2025, por la Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro o parte recurrida).

En el aludido dictamen, la Junta de Retiro confirmó una *Comunicación* emitida el 15 de marzo de 2024 por el Director Ejecutivo de la Junta de Retiro, en atención a la *Solicitud de Servicios No Cotizados* instada por la recurrente, en la que no acreditó los años laborados por la recurrente en PRIDCO y PRAFAA.[2] Ello, al entender que no correspondían acreditar dichos años de servicio debido a que la recurrente no cotizó el retiro y tampoco realizó la aportación patronal e individual correspondiente,

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rodríguez Casillas.
[2] Apéndice del Recurso de Revisión Judicial, pág. 51. Véase también Comunicación del 12 de octubre de 2023, Apéndice del Recurso de Revisión Judicial, pág. 48.

Núm. Identicador:
SEN2025_____

conforme a la *Ley de Retiro de la Judicatura* Ley Núm. 12 de 19 de octubre de 1954 (Ley núm. 12-1954), según enmendada, 4 LPRA sec. 233, *et.seq.*[3]

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I.**

El caso de autos tiene su origen el 24 de febrero de 2022, cuando la Hon. Pérez Pabón presentó una *Solicitud de Servicios No Cotizados* en el que solicitó la acreditación de varios años de servicio en unas agencias administrativas para su retiro a tenor con el rango de "*Servicios prestados a Agencia, Instrumentalidades, Municipio y Empresas, conforme a las disposiciones de la Ley 10 de 1992*".[4] En esa misma fecha, la recurrente cursó una *Carta* a la Directora del Área de Servicios al Participante de la Administración de los Sistemas de Retiro del Estado Libre Asociado de Puerto Rico y la Judicatura, en la que solicitó asistencia para acreditar el servicio no acreditado hasta la fecha del 15 de marzo de 2022.[5]

El 25 de febrero de 2022, la Ayudante Administrativa de la Oficina de Administración de Tribunales cursó una misiva a la Junta de Retiro en la que acompañó la *Solicitud de Servicios No Cotizados* de la Hon. Pérez Pabón.[6] En dicha solicitud, anejó los siguientes documentos: Notificación de Nombramiento y Juramento, Informe de Cambio, Certificación relacionada con interrupciones en el servicio y hoja de servicio. Asimismo, incluyó documentación relacionada al tiempo en el que trabajó en PRAFAA y PRIDCO.

El 14 de marzo de 2022, la Junta de Retiro cursó una *Notificación* a la recurrente en la cual le informó que, conforme la información que surgía en su sistema, la Hon. Pérez Pabón acumuló

---

[3] *Íd.*, pág. 51.
[4] *Íd.*, pág. 34.
[5] *Íd.*, pág. 33.
[6] *Íd.*, pág. 35-42.

nueve (9) años y un (1) mes de servicio acreditado hasta el 31 de enero de 2022.[7] En su escrito añadió lo siguiente:

> **Periodos cubiertos:**
> 11 de enero de 2013 al 31 de enero de 2022
> - Al 15 de marzo de 2022 (fecha de bloqueo) completará 9 años y 3 meses de servicio.
> - Al saldar la insuficiencia de aportaciones del 18 de febrero de 1993 al 1 de septiembre de 1993, al 15 de marzo de 2022 completaría 10 años y 10 meses de servicio.[8]

Así las cosas, el 14 de marzo de 2022, la recurrida sometió un pago por la suma de $881.67 por concepto de *Servicios No Cotizados* para el periodo de febrero de 1993 a septiembre de 1993.[9] Según consta en el recibo, la fecha de emisión del pago fue el 14 de marzo de 2022, y fue recibida el 15 de marzo de 2022.

El 18 de agosto de 2023, la Junta de Retiro emitió un *Estado de Cuenta* en el que le informó a la recurrente que, para el periodo del 8 de febrero de 1993 al 1 de septiembre de 1993 y del 11 de enero de 2013 al 15 de marzo de 2022 tenía acreditado en años de servicios nueve (9) años y once (11) meses con una aportación de $65,790.11 e intereses devengados por la cantidad de $9,486.48. [10] Por otro lado, le informó que con respecto a servicios no cotizados ha completado la cantidad de $881.67 y un monto de $76,158.26 por aportaciones acumuladas.

El 12 de octubre de 2023, la Junta de Retiro cursó una *Carta Enmendada* a la Hon. Pérez Pabón en la que determinó que, luego de analizar la documentación recibida por la Administración de Tribunales, la recurrente acreditó diez (10) años de servicios con derecho a una anualidad vitalicia de $22,400.06.[11]

En una comunicación sin fecha, la recurrente emitió una *Reconsideración de Servicio Acreditable* a la parte recurrida en la que solicitó una reevaluación de la determinación emitida el 12 de

---

[7] *Íd.*, pág. 46.
[8] *Íd.*, pág. 46.
[9] *Íd.*, pág. 45.
[10] *Íd.*, pág. 47.
[11] *Íd.*, pág. 48.

octubre de 2023 por entender que, en el cálculo realizado, erróneamente no se incluyó el periodo de once (11) años que trabajó en PRFAA y PRIDCO.[12]

En respuesta a la misiva, el 15 de marzo de 2024, la Junta de Retiro cursó una *Carta* en la que respondió la *Petición de Reconsideración de Servicio Acreditable* en el que reafirmó la decisión efectuada el 12 de octubre de 2023.[13]

El 12 de abril de 2024, la recurrente presentó una *Apelación* en la que sostuvo que la Junta de Retiro debió haber incluido el periodo del 1 de julio de 1992 al 12 de diciembre de 2012, por haber sido clasificada incorrectamente como contratista independiente, pese a que no se realizaron las aportaciones patronales.[14]

El 6 de mayo de 2024, la Junta de Retiro emitió una *Resolución* en la que reafirmó el dictamen emitido el 12 de octubre de 2023, tras sostener que la recurrente discrecionalmente no cotizó ante el Sistema de Retiro los años de servicio en que laboró durante el periodo del 1 de julio de 1992 al 12 de diciembre de 2012. Por ende, concluyó que no obra del expediente evidencia alguna que demuestre que el cómputo por retiro fue incorrecto conforme a la Ley 12-1954 y la Ley 441-2000.

El 13 de mayo de 2024, la parte recurrida sometió una *Contestación a la Apelación* en la que alegó que la función de la Junta de Retiro versa en calcular el tiempo de servicio conforme a la información provista por los organismos administrativos. Consecuentemente, ante la falta de evidencia, estaba impedida de incluir el periodo que laboró en PRIDCO y PRFAA. Además, añadió que, si las agencias no realizaron las aportaciones al sistema de retiro y la recurrente interesaba participar, debía pagar las

---

[12] *Íd.*, págs. 49-50.
[13] *Íd.*, pág. 51.
[14] *Íd.*, págs. 1-6.

aportaciones individuales y patronales correspondientes a base del salario percibido.

Inconforme, el 9 de junio de 2025, la recurrente presentó ante nos un recurso de *Revisión Judicial* en el que formuló el siguiente señalamiento de error:

> Erró la Junta de Retiro del Gobierno de Puerto Rico como cuestión de hecho y de derecho al denegar la solicitud de la Hon. Pérez Pabón de realizar los pagos correspondientes a la Junta de Retiro para acreditar los años trabajados en PRICO y PRAFAA a su retiro, actuando así de forma irrazonable, ilegal y en abuso de su discreción.

En atención a nuestra *Resolución,* luego de varios trámites procesales, el 5 de agosto de 2025, la Junta de Retiro presentó un *Alegato en Oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver el caso de epígrafe.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra,* pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o

alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56.  Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,*  pág.  728. Para  rebatir  la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de

que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra,* pág. 729. Consecuentemente, cuando un tribunal llega a un

resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota, supra.* Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra,* pág. 77.

**B.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.,* (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 590-

591 (2020). La Revisión Judicial es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. *Íd.* 3 LPRA sec. 9671. La Revisión Judicial de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. de San Juan* v. *J.C.A.*, 149 DPR 263, 279 (1999); *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach,* 214 DPR 370 (2024). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra.* Asimismo, la sección 4.2 de la LPAU establece que,

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
> *Íd.* 3 LPRA sec. 9672.

El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra,* pág. 378. La LPAU no define lo que es una orden o resolución final pero, el Tribunal Supremo ha definido una orden o resolución final como "las decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes". *J. Exam Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). La orden o resolución final, resuelve todas las controversias pendientes ante la

agencia y da finalidad al proceso administrativo. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378, citando a: *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 741–742 (2023); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016); *A.R.Pe. v. Coordinadora*, 165 DPR 850, 867 (2005); *Crespo Claudio v. O.E.G.*, 173 DPR 804, 813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28 (2006). Las decisiones administrativas que no cumplan ese criterio no son revisables judicialmente. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378.

### C.

El derecho a pensión de retiro constituye un seguro de dignidad para quienes, luego dedicar parte de su vida al servicio público, durante su etapa final de vida no queden en el desamparo. *Bayrón Toro v. Serra*, 119 DPR 605 (1987). Dichos planes de retiro son contratos públicos en los que el Estado y el empleado están vinculados desde su otorgamiento a su cumplimiento. *AMPR et als. v. Sist. Retiro V*, 190 DPR 854 (2014).

Pertinente al presente caso, la Ley Núm. 12-1954, creó el Sistema de Retiro de la Judicatura de Puerto Rico, con el fin de establecer un medio eficiente para proveer pensiones a los jueces que acumulen reservas para su vejez, incapacidad, separación del servicio o muerte. La referida ley, en su Artículo 4, dispone lo siguiente:

> Cualquier participante que haya ingresado al Sistema por primera vez en o antes del 30 de junio de 2014 y que por cualquier causa, excepto destitución que implique depravación moral, cese en sus funciones como juez, tendrá derecho a una pensión por retiro que comenzará en la fecha que él especifique en la solicitud escrita de retiro, sujeto a las siguientes disposiciones: (a) En ningún caso la pensión comenzará a pagarse en una fecha anterior a la fecha de su separación del servicio, ni podrá retrotraerse por más de treinta (30) días a partir de la fecha en que se radique la solicitud de pensión. (b) Que el participante haya cumplido sesenta (60) años de edad o más y que tenga por lo

menos diez (10) años de servicio acreditable. (c) Que el participante no esté recibiendo ni tenga derecho a recibir ningún sueldo o remuneración del Gobierno por servicios prestados en cualquier capacidad a la fecha fijada para el recibo de una pensión por retiro.
*Íd.* 4 LPRA sec. 236.

Asimismo, conforme a la mencionada ley, a los jueces que sean miembros del Sistema de Retiro de los Empleados de Puerto Rico, se le acreditarán las aportaciones al Sistema de Retiro de la Judicatura. *Íd.*, sec. 243. En esa línea, la obtención de créditos por servicios en el Sistema de Retiro de Empleados del Gobierno de Puerto Rico y sus Instrumentalidades se regirá por las disposiciones de la Ley Núm. 447 del 15 de mayo de 1951, según enmendada, conocida como el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (Ley Núm. 447-1951). Íd.

Cónsono con lo anterior, en virtud de la Ley Núm. 447-1951, se creó la Ley Núm. 441, según enmendada, Ley para crear el puesto de Coordinador(a) Agencial para Asuntos de Retiro (Ley 441-2000). En ella, se enumeran su deberes y facultades en base a los poderes adquiridos en ley. En lo pertinente, tendrá las siguientes facultades:

a. Será el único gestor y delegado responsable de la coordinación de las actividades sobre asuntos de retiro en su agencia, instrumentalidad, municipio o empresa pública.

b. Representará, diligenciará y será responsable de gestionar toda solicitud, petición o acción sobre beneficios y servicios solicitados por los participantes en el sistema de Retiro en su agencia, instrumentalidad, municipio o empresa pública de Retiro, ante el Sistema de Retiro.

c. Coordinará charlas, conferencias y seminarios con los participantes de su agencia, instrumentalidad, municipio o empresa pública sobre asuntos, cambios y otras situaciones que ocurran o puedan ocurrir en la relación del Sistema de Retiro y sus participantes.

d. Coordinará, junto al personal que designe el administrador del Sistema de Retiro, toda acción bajo la facultad del administrador, conforme a la Sección 777 [sic] de la Ley Núm. 447, de 15 de mayo de 1951, según enmendada, conocida como "Ley del Sistema de Retiro de los Empleados del Gobierno e Instrumentalidades" [3 L.P.R.A. 777]. Para ello el administrador establecerá todo procedimiento por

reglamento. Todo conforme con la Ley Núm. 170 de 18 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo de Puerto Rico" [Nota: Derogada y sustituida por la Ley 38-2017].

e. Será el único custodio y responsable de recopilar y mantener al día el expediente de cada funcionario o empleado acogido al Sistema de Retiro en su agencia, instrumentalidad, municipio o empresa pública. El expediente será de naturaleza confidencial. Lo podrá ver su dueño o cualquier funcionario con capacidad legal para ello y ante el coordinador y supervisado por éste.

[...]

Ley Núm. 441-2000, sec. 8301, pág.7-8.

Por otra parte, en virtud de la *Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos*, Ley Núm. 106 de 23 de agosto de 2017 (Ley Núm. 106-2017), según enmendada, 3 LPRA sec. 9531, *et. seq,* se creó la Junta de Retiro. El estatuto unió al Sistema de Retiro de Maestros, al Sistema de Retiro del Gobierno Central y a la Judicatura. Específicamente, el Art. 4.2(a) de la Ley Núm. 106-2017 establece los siguientes deberes de la Junta de Retiro:

(a) Fungir como el máximo ente rector de los Sistemas de Retiro. A esos fines, la Junta tendrá y ejercerá todos los poderes, deberes y facultades conferidos a las Juntas de Síndicos de los Sistemas de Retiro. Al entrar en vigor esta Ley, estos poderes y facultades se transferirán automática y permanentemente a la Junta de Retiro. Consecuentemente, las Juntas de Síndicos de los Sistemas de Retiro quedarán disueltas al entrar en vigor esta Ley. Cualquier referencia a las Juntas de Síndicos de los Sistemas de Retiro se entenderá que se refiere a la Junta de Retiro. Todos las disposiciones y reglamentos adoptados por las Juntas de Síndicos de los Sistemas de Retiro continuarán en vigor luego de la aprobación de esta Ley hasta que estos sean enmendados o modificados por la Junta de Retiro y cualquier referencia en estos reglamentos a las Juntas de Síndicos de los Sistemas de Retiro se entenderá que es una referencia a la Junta de Retiro. Todo lo anterior estará sujeto a las disposiciones del Capítulo 7 de esta Ley. Además, la Junta de Retiro tendrá y ejercerá todos los poderes, deberes y facultades necesarios para la administración y manejo del Nuevo Plan de Aportaciones Definidas y la supervisión de cualquier Entidad Administradora, incluyendo la facultad para establecer las reglas y requisitos para recibir los beneficios bajo el Nuevo Plan de Aportaciones Definidas.

[...]

(c)Adoptar todas las reglas, reglamentos, normas y procedimientos para su organización y funcionamiento; y para la implementación de esta Ley

Ante las facultades conferidas, el 6 de noviembre de 2024, se creó el Reglamento de Asuntos Adjudicativos de la Junta de Retiro del Gobierno de Puerto Rico (Reglamento Núm. 9614), con el propósito de establecer las normas para los procedimientos apelativos ante la Oficina de Asuntos Adjudicativos de la Junta de Retiro, a tenor con las disposiciones de la Ley Núm. 38-2017 y la Ley Núm. 447-1951. El referido reglamento establece en la regla 3.12, que "solo se admitirá como prueba aquella que estuvo sometida ante la consideración del Director Ejecutivo al tomar la Determinación Final". Regla 3.12(D) del Reglamento Núm. 9614, pág. 26. Del mismo modo, en referencia a las resoluciones emitidas por la Junta de Retiro, esta "resolverá de acuerdo a la prueba, sosteniendo, modificando o revocando la acción del Director Ejecutivo o podrá dictar la resolución que en ley debió haber dictado este(a) o devolver el caso al Director Ejecutivo". *Íd.*, Regla 4.04 (B), págs. 31-32.

**III.**

En el caso de epígrafe, la recurrente alegó que la Junta de Retiro abusó de su discreción al denegar la solicitud de la Hon. Pérez Pabón tras no acreditarle los años trabajados en PRIDCO y PRFAA para su retiro. Arguyó que, conforme a la Ley Núm. 447-1951, la recurrente tenía derecho a pagar por el periodo que no cotizó para su retiro y, consecuentemente, acumular sobre veinte (20) años de servicio.

Conforme a las normas jurídicas pormenorizadas, es sabido que debemos brindarles deferencia a las determinaciones de hecho de las agencias administrativas. Ello, en virtud de que los entes administrativos tienen la pericia y el conocimiento experto del cual

carecemos. Sin embargo, estamos autorizados para intervenir en las determinaciones de las agencias en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero v. Toyota*, supra. Por tanto, esta Curia debe considerar la experiencia y especialización que tiene una agencia administrativa al evaluar la prueba que tuvo ante su consideración. No obstante, estamos autorizados a revisar las conclusiones de derecho que pronuncie una agencia en su totalidad.

En lo pertinente al caso ante nuestra consideración, la Oficina de Asuntos Adjudicativos de la Junta de Retiro, ostenta la facultad y el deber de investigar y resolver las controversias impugnadas por los beneficiarios. Para ello, utiliza la prueba y evidencia, proveniente de los entes administrativos, presentada ante el Director Ejecutivo de la Junta de Retiro, con el fin de adjudicar la controversia ante sí.

Tras un análisis detallado del expediente, resolvemos que la Junta de Retiro no cometió el error señalado en el caso de autos.

En primer lugar, según surge del expediente, el 14 de marzo de 2022, la Junta de Retiro atendió la *Solicitud de Servicios No Cotizados* de la recurrente y acompañó dos (2) costos de servicios no cotizados. Entre ellos, un costo ascendente a $881.67 y otro por la cantidad de $79,361.29. Ante esta realidad, el 14 de marzo de 2022, la Hon. Pérez Pagán emitió un pago por la cantidad de $881.67, sin embargo, no emitió el pago por la acreditación acumulada de $79,361.29.

Ante ello, la Hon. Pérez Pabón, objetó la acreditación del servicio al entender que, acreditó una cantidad superior a veinte (20)

años de servicio. En esa línea, cuestionó el cálculo de la Junta de Retiro por no incluir el periodo trabajado en PRIDCO y PRFAA, donde laboró por contrato de servicios profesionales y, consecuentemente, no aportó al servicio de retiro.

La Junta de Retiro, conforme a la evidencia que surge del expediente administrativo, concluyó que al no tener evidencia de aportaciones individuales y/o patronales durante el periodo del 1 de julio de 1992 al 2 de diciembre de 2012, estaba impedida de acreditarle los veinte años (20) de retiro. Ciertamente, conforme a la Ley Núm. 447-1951 y la Ley Núm. 441-2000, la Junta de Retiro está facultada para evaluar la evidencia presentada ante su consideración y llevar a cabo los cálculos procedentes. Así pues, la recurrente no evidenció que aportó al sistema de retiro los años trabajados en PRIDCO y PRFAA. Tampoco acreditó que solicitó acogerse al sistema de retiro durante el mencionado periodo. Ante los planteamientos antes expuestos, la parte recurrida emitió una *Resolución* en base a la totalidad del expediente administrativo y según las facultades conferidas en ley. Por tanto, la Junta de Retiro estaba inhabilitada de conferirle los años solicitados.

En segundo lugar, ante las alegaciones de la recurrente, notamos que el 16 de diciembre de 2024, la recurrente cursó una oferta transaccional a la parte recurrida, la cual fue rechazada por la Junta de Retiro, por entender que se encontraba impedida debido a la aprobación del Plan de Ajuste de la Deuda. No obstante, no surge evidencia fehaciente que pruebe los actos específicos previos, por parte de la recurrente, con el fin de completar el pago de las acreditaciones acumuladas por la cantidad de $79,361.20. Sin embargo, en la *Apelación,* la recurrente no sometió ante la Junta de Retiro alegación alguna referente a la prohibición por parte del ente administrativo para que la recurrente emitiera un pago con relación a las acreditaciones acumuladas en controversia. Tampoco la

recurrente presentó ante nuestra consideración la mencionada oferta transaccional ni la carta denegatoria por parte de la Junta de Retiro con respecto a los servicios no acreditados. En esencia, no podemos colegir que dicha transacción se realizó con el propósito de pagar el periodo no acreditado cuando no tenemos prueba ni constancia de las referidas alegaciones ni planteamientos de error ante la Junta de Retiro.

En síntesis, la parte recurrente no presentó prueba que guíe a este Tribunal de Apelaciones a resolver en contrario. No podemos presumir que el mencionado documento, que no fue previamente presentado como planteamiento de error ante la Junta de Retiro, nos persuadiera a retirar la deferencia que le debemos a las agencias administrativas.

A la luz de lo esbozado, del expediente ante nuestra consideración no surge que hubo abuso de discreción por parte de la Junta de Retiro, ni encontramos prueba de que su determinación fue irrazonable o infundada.

**IV.**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones